IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **MELISSA H.**[1], <br><br>           Plaintiff, <br><br>     v. <br><br> **KILOLO KIJAKAZI,** Acting Commissioner of Social Security, <br><br>           Defendant. | Case No. 1:22-cv-620-SI <br><br> **OPINION AND ORDER** |

John E. Haapala, Jr., 401 E. 10th Ave., Suite 240, Eugene, OR 97401. Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Kevin Danielson, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Jeffrey E. Staples, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

   Plaintiff Melissa H. appeals the final decision of the Commissioner of the Social Security

Administration (Commissioner) denying Plaintiff's application for Disability Insurance Benefits

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

PAGE 1 – OPINION AND ORDER

(DIB) under Title II of the Social Security Act (Act). The Court has jurisdiction to hear this appeal pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the review provisions of 42 U.S.C. § 405(g). As explained below, the Court reverses the Commissioner's decision for an immediate award of benefits.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff applied for DIB on July 11, 2016, alleging a disability onset date of February 4, 2015. AR 149, 156. Plaintiff's date of birth is June 22, 1987; she was 28 years old as of the alleged disability onset date. AR 149.

The Commissioner disapproved Plaintiff's claim both initially on August 15, 2016 and upon reconsideration on October 26, 2016. AR 74, 80. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ) on December 13, 2016. AR 80. Plaintiff appeared for a hearing before ALJ John D. Sullivan on August 20, 2018. AR 34. On September 25, 2018, ALJ Sullivan issued a decision denying Plaintiff's claim for benefits. AR 15-25. Plaintiff timely appealed the ALJ's decision to the Appeals Council on October 5, 2018, and on July 3, 2019, the Appeals Council denied Plaintiff's request for review. AR 1618. Plaintiff then filed a complaint to review and set aside the Commissioner's decision. AR 1624-1625. On April 26, 2021, U.S. District Court Chief Judge Marco Hernández reversed the Commissioner's decision and remanded for further administrative proceedings. AR 1642. On February 2, 2022, after further administrative proceedings, the ALJ issued a decision denying Plaintiff's claim for benefits. AR 1540-1557. Plaintiff did not file written exceptions with the Appeals Council and the Appeals Council did not review the ALJ's decision on its own. Accordingly, the ALJ's decision became the final decision of the agency from which Plaintiff seeks review.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R.

PAGE 4 – OPINION AND ORDER

>    §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.
>
> 5.   Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C.   The ALJ's Decision**

As a preliminary step, the ALJ found that Plaintiff met insured status requirements through March 31, 2017. AR 1541. At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity from the alleged onset date, February 4, 2015, through the date last insured (DLI), March 31, 2017. AR 1543.

At step two, the ALJ found that, through the DLI, Plaintiff suffered from the following severe medically determinable impairments (MDIs): "generalized anxiety disorder, panic disorder with agoraphobia, attention deficit hyperactivity disorder (ADHD), severe sepsis, acute respiratory failure, arterial insufficiency, and obesity." *Id.* The ALJ then found that, through the DLI, Plaintiff's alcohol abuse and acute renal failure were not severe MDIs. *Id.* The ALJ also concluded that Plaintiff's below-the-knee amputation (BKA) was not an MDI through the DLI, and that no basis exists to infer an onset date within Plaintiff's period of insured status. AR 1543-46.

At step three, the ALJ determined that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 1546-48. Because the impairments did not meet or equal one of the listed impairments, the ALJ assessed Plaintiff's RFC, including both physical and mental limitations. AR 1548-55. The ALJ determined that Plaintiff has the RFC to perform light work as defined in 20 CFR § 404.1567(b), with the following restrictions:

> lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit for six hours, stand for six hours, and/or walk for six hours each per eight-hour workday; push and/or pull within the limits of lift and/or carry; climb ramps and stairs frequently; never climb ladders, ropes, or scaffolds; stoop, kneel, crouch, and crawl occasionally; never work at unprotected heights or around moving mechanical parts; never operate a motor vehicle for commercial purposes; must avoid exposure to dusts, odors, fumes, and other pulmonary irritants; able to perform simple, routine tasks at a reasoning level of 2 or less; able to make simple work-related decisions; able to interact with supervisors, coworkers, and the public occasionally; and, in addition to normal breaks, will be off-task five percent of the time throughout an eight-hour workday.

AR 1548.

Plaintiff had no past relevant work so the ALJ did not evaluate whether Plaintiff could perform any past relevant work at step four. Lastly at step five, after considering Plaintiff's age,

education, work experience, and RFC, the ALJ determined that, through the DLI, Plaintiff could have performed other work that existed in significant numbers in the national economy, such as: (1) Production assembler, DOT job number 706.687-010, unskilled SVP 2, light exertion, 16,100 jobs nationally; (2) Small products I assembler, DOT job number 706.684-022, unskilled SVP 2, light exertion, 19,700 jobs nationally; and (3) Collator operator, DOT job number 208.685-010, unskilled SVP 2, light exertion, 39,000 jobs nationally. Accordingly, the ALJ concluded that Plaintiff was not disabled from the alleged onset date, February 4, 2015, through the DLI, March 31, 2017.

## DISCUSSION

Plaintiff argues that the ALJ erred in concluding that Plaintiff's BKA was not a disabling condition under the Act. Plaintiff asserts that the ALJ's analysis ignored or misapplied the previous order of remand of the U.S. District Court, the opinion of an impartial medical expert called to testify at the hearing, Dr. Nitin Dhiman, M.D., and the requirements of Social Security Ruling (SSR) 18-01p, *available at* 2018 WL 4945638 (Oct. 2, 2018). Plaintiff further requests that the Court remand this case for an award of benefits.

Plaintiff went to the emergency room on March 27, 2017, complaining of vomiting and stomach pain. She was discharged and told to follow up with her doctor. Her doctor had her return to the emergency room on March 28, 2017, and she was admitted to the hospital on that day. On March 29, 2017, she had a laparoscopic surgical procedure to remove her gallbladder and take a biopsy of her liver. AR 353. On March 30, 2017, she became lethargic, and developed hypotension, tachypnea, tachycardia, and hypoxemia. AR 354. She was transferred to the intensive care unit and intubated. The hospital also performed a CT scan revealing severe hepatic

steatosis.[2] AR 354. On March 31, 2017, due to further complications, she had a central line and a right femoral line inserted. She continued to deteriorate, suffering from shock, sepsis, and acute kidney injury and failure. AR 355. Her condition was "critical" and her husband approved many procedures. *Id.* She continued having problems and ultimately underwent a BKA on April 14, 2017.

During Plaintiff's previous litigation of the Commissioner's prior rejection of Plaintiff's claim, Judge Hernández held that the ALJ erred in evaluating the medical evidence at step two.[3] Judge Hernández first determined that the ALJ erred in concluding Plaintiff did not have an MDI prior to her DLI, citing diagnoses of severe sepsis, acute respiratory failure, and arterial insufficiency. *Melissa H. v. Comm'r, Soc. Sec. Admin.*, 2021 WL 1663858, at *4 (D. Or. Apr. 26, 2021). Judge Hernández also determined that "the record supports an inference of a relationship between these conditions and Plaintiff's BKA, suggesting the onset of a severe impairment lasting or expecting to last twelve months prior to her DLI." *Id.* Finally, Judge Hernández determined that the ALJ erred by failing to "address [SSR 18-01p][4] or whether Plaintiff's physical conditions were traumatic or nontraumatic in determining the onset date." *Id.* Judge Hernández explained that he remanded for further proceedings because the "ALJ failed to

---

[2] Hepatic steatosis is known as "fatty liver disease" and is caused by the storage of extra fat in the liver. *See* Cleveland Clinic, *Fatty Liver Disease*, https://my.clevelandclinic.org/health/diseases/15831-fatty-liver-disease.

[3] Judge Hernández also found that the ALJ erred in evaluating the opinion of Plaintiff's treating provider, Dr. Alden B. Glidden, M.D., but Plaintiff does not allege error based on that point of remand.

[4] Judge Hernández cited SSR 83-20, which was rescinded on October 2, 2018, and replaced by SSR 18-01p. SSR 18-01p applies "to new applications filed on or after the applicable date of the SSR and to claims that are pending on and after the applicable date." SSR 18-01p, 2018 WL 4945639, at *7.

adequately address whether Plaintiff's physical impairments were related impairments and ascertain their onset date under the applicable social security rulings at step two of the sequential analysis." *Id.* at *7.

After the remand by Judge Hernández, the ALJ called an impartial medical expert, Dr. Dhiman. Dr. Dhiman testified that Plaintiff was hospitalized in intensive care for the following acute MDIs: cryptogenic organizing pneumonia, acute kidney injury associated with septic shock, electrolyte sequela and lab disturbances associated with septic shock, cellulitis of the lower extremity, obesity, and history of alcohol abuse. AR 1581-82. He noted that the combined effects of these conditions would be considered severe. AR 1582. He also stated that "the effects of some of the events that she went through during that hospitalization, on March 31st, could linger up to a year and we have evidence of that because of the amputation." *Id.* He opined that Plaintiff did not meet or equal a listing *prior to* March 31, 2017, but that she had significant limitations. *Id.* In agreeance with the ALJ, Dr. Dhiman further opined that Plaintiff met the listing after her DLI. AR 1583.

When questioned by Plaintiff's attorney, Dr. Dhiman testified regarding Plaintiff's condition *on* March 31, 2017, as opposed to *prior to* March 31st. Dr. Dhiman then testified that Plaintiff *did* equal a listing on March 31, 2017, because she was intubated and hospitalized for a lengthy period and then had her leg amputated. AR 1585. The ALJ sought clarification, and Dr. Dhiman testified that Plaintiff suffered from medical complications, and although they were "treatable conditions," many of them "did not really respond well to the treatment that she was obtaining during her hospitalization which eventually led to the amputation because of vascular insufficiency." AR 1585-86. He stated that Plaintiff's hospitalization as of March 31, 2017

"would [not] preclude her from being employable" because "the treatment and the medical management had yet to . . . kick in." AR 1586.

After further questioning Dr. Dhiman believed he understood what the ALJ was asking and clarified that as of March 31, 2017, "although Plaintiff would not be able to work due to her conditions," Plaintiff's hospitalization would not "have met or equaled a listing because that's just a hospitalization" without a chronic condition. *Id.* But Plaintiff met a listing upon her amputation. AR 1587. Dr. Dhiman also opined that the arterial insufficiency Plaintiff suffered from in her right lower extremity on March 31, 2017 led to the BKA. AR 1588. Dr. Dhiman also explained that he had not considered Listing 4.12 because he had not evaluated the BKA under that listing's parameters, which tend to relate to chronic conditions later in life leading to deterioration, as opposed to acute conditions causing necrotic tissue and emergency amputation.

Based on Dr. Dhiman's testimony, the ALJ determined that Plaintiff's BKA did not meet or equal any listing. The ALJ found that Plaintiff's BKA and its related limitations did not meet Listing 1.20 because before the BKA, Plaintiff was merely hospitalized for acute conditions that were treatable and only upon her BKA did she meet the listing. AR 1544. Her vascular insufficiency did not meet or equal Listing 4.12 because it was an acute condition, "not a disease process she had prior to that point." *Id.*

The ALJ analyzed the onset date of Plaintiff's BKA under SSR 18-01p as follows:

> When determining onset under Social Security Ruling 18-1p, the undersigned finds the claimant's amputation did not result from a traumatic injury or event. The record shows the claimant's hospitalization was initiated due to abdominal pain and vomiting in the setting of a recent gallbladder removal surgery with suspected insult of aspiration and development of cholestasis of sepsis. Despite treatment, the claimant developed multiple complications with acute symptoms. As Dr. Dhiman testified, although the claimant's arterial insufficiency eventually led to the claimant's below knee amputation, he explained this was an acute condition,

PAGE 10 – OPINION AND ORDER

> rather than chronic.
>
> Therefore, undersigned notes this supports a conclusion the claimant's below knee amputation was not due to a non-traumatic impairment, as defined by Social Security Ruling 18-1p. That is, the evidence does not show the amputation was the result of any static or progressive impairment, or exacerbating and remitting impairment. Dr. Dhiman testified the claimant was hospitalized on March 31, 2017 for acute conditions that should have responded to treatment. The undersigned finds this is consistent with the objective evidence. In agreement with Dr. Dhiman's opinion, the undersigned finds no basis for inferring from the evidence an onset date through the claimant's date last insured for the claimant's below knee amputation.

AR 1545-46 (citations omitted).

It is unclear how the ALJ evaluated the onset date of Plaintiff's BKA. The ALJ concluded that Plaintiff's BKA "did not result from a traumatic injury or event" and that it "was not due to a non-traumatic impairment." AR 1545-46. He also concluded it was not the result of a static or progressive impairment or an exacerbating and remitting impairment. AR 1546. The ALJ does not state what type of injury or impairment he *did* conclude Plaintiff's BKA constituted.

The ALJ erred in his analysis under SSR 18-01p in concluding that as a result of Plaintiff's BKA, she did not meet or equal a listing as of March 31, 2017. Dr. Dhiman's testimony, although somewhat convoluted, provides the necessary evidence on which the ALJ was required to so find. Dr. Dhiman's medical opinion provides the connection between Plaintiff's BKA, a condition the ALJ and Dr. Dhiman concluded caused Plaintiff to meet a listing, and Plaintiff's conditions while hospitalized on March 31, 2017, Plaintiff's DLI. Dr. Dhiman also testified that he believed Plaintiff did not meet a listing between March 31st and April 14th because her conditions were treatable, should have responded to treatment, and thus were not *expected* to last more than 12 months. But Dr. Dhiman also acknowledged that

PAGE 11 – OPINION AND ORDER

Plaintiff's conditions *did not* respond to treatment and opined that they *led* to her BKA. Dr. Dhiman also specifically recited as evidence that the effects of Plaintiff's conditions could last more than 12 months the fact of her BKA.

In an ideal world, Plaintiff's conditions as of March 31, 2017 would have responded to treatment, and she would not have needed a BKA and become disabled. But that did not happen. The Commissioner must evaluate Plaintiff's condition based on what occurred. Dr. Dhiman testified that her BKA was the result of her vascular condition from March 31, 2017. Dr. Dhiman, as a medical provider, does not necessarily understand the requirements of SSR 18-01p. His testimony actually shows that Plaintiff was disabled as of March 31, 2017 under SSR 18-01p, despite his opinion that she was not disabled on that date because he otherwise would have expected her condition to improve.

SSR 18-01p explains how to determine the onset date of disability "in claims that involve traumatic, non-traumatic, and exacerbating and remitting impairments." SSR 18-01p, 2018 WL 4945638, at *1. To determine the onset date of disability, the SSR states to consider "whether we can establish the [onset date] as of the claimant's potential onset date (POD) of disability." *Id.* at 3. "The POD is the first date when the claimant met the non-medical requirements during the period covered by his or her application. . . . If the claimant meets the statutory definition of disability on his or her POD, we use the POD as the [onset date]." *Id.* at *3. If the claimant meets the definition of disability after the POD, "we use the first date that the claimant meets both the statutory definition of disability and the applicable non-medical requirements as his or her [onset date]." *Id.*

A claimant meets the statutory definition of disability if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). For traumatic impairments, "[i]f the evidence . . . supports a finding that the claimant met the statutory definition of disability on the date of the traumatic event or traumatic injury, [the Commissioner] will use that date as the date that the claimant first met the statutory definition of disability." SSR 18-01p, 2018 WL 4945638, at *5. For non-traumatic impairments, if "the evidence . . . supports a finding that the claimant met the statutory definition of disability, [the Commissioner] will determine the first date that the claimant met that definition." *Id.* That date "must be supported by the medical and other evidence and be consistent with the nature of the impairment(s). [The Commissioner] consider[s] whether [she] can find that the claimant first met the statutory definition of disability at the earliest date within the period under consideration[.]" *Id.*

Non-traumatic impairments include: (1) "Static impairments that [the Commissioner does] not expect to change in severity over an extended period, such as intellectual disability;" (2) "Impairments that [the Commissioner] expect[s] to improve over time, such as pathologic bone fractures caused by osteoporosis;" and (3) "Progressive impairments that [the Commissioner] expect[s] to gradually worsen over time, such as muscular dystrophy." *Id.* The ALJ found that Plaintiff's BKA was not due to a non-traumatic impairment because the BKA was the result of an acute versus chronic condition, was not the result of an existing impairment, and was not the "result of any static or progressive impairment." AR 1545-46.

The ALJ found that Plaintiff's BKA was not due to a traumatic injury or event. Traumatic injuries or events can include automobile accidents. SSR 18-01p, 2018 WL 4945639, at *5. In the revised rule 18-01p issued in 2018, the Commissioner removed from "traumatic" injury the previous specific requirement that the claimant must be "expected to die as a result or [be]

expected to be unable to engage in substantial gainful activity (SGA) (or gainful activity) for a continuous period of at least 12 months." SSR 83-20, 1983 WL 31249, at *2 (Jan. 1, 1983). The definition of traumatic event in the revised rule, however, contains the requirement to meet the statutory definition of disability, which requires an impairment lasting 12 months or more.

The ALJ determined that Plaintiff's BKA did not result from a traumatic injury or event, although the ALJ does not explain why. The ALJ states that Plaintiff's condition was acute rather than chronic and was not from an existing condition, but those are not reasons to find that it did not qualify as traumatic. Thus, the ALJ's reasoning in concluding that Plaintiff's condition did not qualify as traumatic is not ascertainable or supported by substantial evidence.

Plaintiff argues that the ALJ erred by ignoring the clarifications SSR 18-01p provides, failing to apply the rules pertaining to injuries and events of traumatic origin, and finding that Plaintiff's BKA did not result from a traumatic injury or event. Plaintiff asserts that she experienced a traumatic event during her hospitalization on March 31, 2017, and that hospitalization led to Plaintiff's BKA. Plaintiff argues that Plaintiff's hospitalization was a traumatic event because it was an event "relating to, being, or caused by a sudden, severe, often life-threating injury to the body," and includes injuries such as, "tissue damage or physical stress" and "medical procedures such as artery-dilating and open-heart surgery." ECF 18, at 11 (quoting *Traumatic*, https://www.merriam-webster.com/dictionary/traumatic (last visited June 30, 2023)). Plaintiff notes that Dr. Jeffrey C. Buehler diagnosed Plaintiff "with severe systemic disease that is a constant threat to life." AR 549-50. Plaintiff "became hypotensive and hypoxic on March 30, 2017, upon which she was unresponsive and intubated for acute respiratory failure secondary to infection, and resulting in septic shock and acute kidney failure." AR 1543. Plaintiff asserts that this chain of traumatic events caused Plaintiff's BKA. Thus, Plaintiff argues

PAGE 14 – OPINION AND ORDER

that Plaintiff's BKA resulted from a traumatic injury or event, establishing her onset date of disability as of March 31, 2017.

The Court agrees with Plaintiff. The record shows that Plaintiff's BKA resulted from a traumatic injury or event that began on March 30, 2017, reaching a critical level on March 31, 2017. Dr. Dhiman testified that although generally Plaintiff's condition as it existed on March 31, 2017, would have been expected to improve with treatment, Plaintiff's condition *did not* improve with treatment and *caused* her BKA. This answers the key questions for which this case was remanded by Judge Hernández. *See Melissa H.*, 2021 WL 1663858, at *4; *see also Lichter v. Bowen*, 814 F.2d 430, 436 (7th Cir. 1987) (remanding for evaluation under then-governing SSR 83-20 because "[a]lthough Dr. Liberman's report does not expressly identify a date on which he believes Lichter first became disabled, the report does indicate that Lichter's mental illness stems from the automobile accident of February 12, 1981 and is of traumatic origin"); *Burrell v. Astrue*, 2012 WL 3817788, at *4 (S.D. Ala. Aug. 31, 2012) (rejecting ALJ's conclusion that pain from foot impairment would not last longer than 12 months because "plaintiff's foot pain, caused by the underlying condition and the two surgeries, constituted a single impairment").

The ALJ and Dr. Dhiman found that Plaintiff's BKA met a listing and is disabling. Dr. Dhiman's testimony provides the link that Plaintiff's condition on March 31, 2017, was severe and had a lasting effect of more than 12 continuous months; namely, the complication of Plaintiff's vascular insufficiency that led to her BKA. *See* AR 1582, 1585-86. Thus, on March 31, 2017, Plaintiff suffered from a traumatic injury or event that led to Plaintiff's BKA. Plaintiff's onset date of disability therefore is March 31, 2017. It is within her disability

insurance coverage. The record is fully developed and there is no useful purpose in another remand for further proceedings. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015).

## CONCLUSION

The Court REVERSES the Commissioner's decision that Plaintiff was not disabled and REMANDS this case for an immediate calculation of benefits.

**IT IS SO ORDERED**.

DATED this 31st day of July, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge